UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ABDUL G. BURIDI                                                              PLAINTIFF

v.                                                                  NO. 3:12-CV-00486-S

BRANCH BANKING AND TRUST
COMPANY                                                                      DEFENDANT

## **MEMORANDUM OPINION**

Before the court is a motion by the Defendant, Branch Banking and Trust Co. ("BB&T")
to dismiss the Plaintiff's complaint (DN 1-1) for failure to state a claim upon which relief can be
granted under Fed. R. Civ. P. 12(b)(6) (DN 6).

The Plaintiff's complaint asserts three claims against BB&T: (1) fraud by affirmative
misrepresentation or fraud by omission; (2) negligent misrepresentation; and (3) breach of the
implied covenant of good faith and fair dealing. The Plaintiff requests compensatory and
punitive damages and reimbursement of the guaranty that he entered into with BB&T. He also
asserts that an award for attorneys' fees and costs is appropriate (DN 1-1).

BB&T's motion to dismiss argues that the Plaintiff fails to state a claim under Fed. R.
Civ. P. 12(b)(6) because BB&T is a commercial lender and thus, had no duty to inform the
Plaintiff of the change in status or scope of the construction project in which the Plaintiff
invested. BB&T also argues that *res judicata* bars the Plaintiff's claims because they were not
brought in the prior proceeding to enforce the Plaintiff's guaranty (DN 6-1).

**BACKGROUND**

The Plaintiff sued BB&T in state court and BB&T subsequently removed the case to this court on diversity grounds.

The Plaintiff alleges that he suffered pecuniary loss by entering into a personal guaranty with BB&T for a hospital construction loan because BB&T provided him with false and incomplete information regarding changes in the scope of the construction (DN 1-1). The Plaintiff contends that he would not have agreed to assume personal liability under the guaranty if BB&T had informed him that the scope of the construction project had materially changed.

It is uncontested that the Plaintiff is a physician who had an ownership interest in a hospital investment project, the Kentuckiana Medical Center LLC ("KMC"). Although the hospital was built, the project ultimately failed and the investors defaulted on their creditor obligations, including those to BB&T. The KMC hospital project was a venture between two investment groups, Kentuckiana Investors, LLC ("KI")—which was owned by the Plaintiff along with 30 other physicians—and Cardiovascular Hospitals of America ("CHA").

The KMC was originally intended to be a 60-bed, 80,000 square-foot hospital with 48 regular hospital beds and 12 emergency beds in an emergency wing. KMC investors sought a construction loan from BB&T for $21.5 million. The Plaintiff contends that the loan documents—the credit review documents, the appraisal, the loan commitment letter and final loan documents—all indicate that the loan was to be used to for a 60-bed hospital (DN 1-1). The Plaintiff alleges that when he was approached by KI to invest in KMC he paid $34,400.10 for his 1% interest in KI (approximately a 0.5% interest in the KMC) (DN 1-1).

As a condition of making the $21.5 million loan, BB&T requested personal guaranties from several KI investors. The Plaintiff entered into a personal guaranty with BB&T in July 2007. He contends that based on the loan commitment letter he received in May 2007, that he believed that the loan proceeds would be used to build a 60-bed hospital (DN 1-1).

However, the KMC was actually built as a smaller 48-bed hospital, which excluded the 12 emergency beds and the emergency wing. The Plaintiff alleges that the construction of the smaller hospital was contrary to the investors' initial plan and the initial loan agreement with BB&T. He contends that BB&T knew and failed to disclose that the scope of the project had changed by the time the Plaintiff entered the personal guaranty with BB&T (DN 1-1).

The Plaintiff argues that when he entered the guaranty he did not know that the project had been scaled back and that BB&T falsely represented that the project was proceeding as originally planned (DN 1-1). The Plaintiff contends that he would not have incurred liability on the smaller and less financially viable project if BB&T had not concealed the material change in the scope of the project at the time the Plaintiff entered the guaranty (DN 1-1).

Later, after the hospital investors defaulted on their obligations to BB&T, BB&T sold the loan and assigned the related guaranties to Rialto Capital Management ("Rialto"), a distressed loan investor. Rialto filed an action against the Plaintiff and the other investors to enforce their guaranties in an Indiana state court, which entered a final judgment enforcing the Plaintiff's guaranty in 2011 (DNs 1-1 and 10). The Plaintiff claims that he incurred $430,000.00 in liability under the guaranty in addition to attorneys' fees (DN 1-1).

## DISCUSSION

Under Fed. R. Civ. P. 12(b)(6), if the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2008). To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are merely consistent with a defendant's liability," rather, a plaintiff must allege "facts – not legal conclusions or bald assertions – supporting a 'plausible' claim for relief." *Id.* at 687 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard. *See id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The court must take all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Here, BB&T argues that the Plaintiff's complaint fails to state any claims for relief under Kentucky law because each of the claims either lacks a critical element or rests on a flawed premise (DN 6-1). BB&T specifically argues (1) that the Plaintiff's fraud by affirmative misrepresentation and fraud by omission claims fail because BB&T owed no legal duty to disclose any changed circumstances regarding the hospital project; (2) that the Plaintiff's negligent misrepresentation claim fails because it is based on an alleged omission—not an affirmative misrepresentation as required under Kentucky law; (3) and that the Plaintiff's breach of good faith and fair dealing claim fails both as a cause of action in tort and in contract (DN 6).

- 4 -

### I.       Fraud by Affirmative Misrepresentation and Fraud by Omission

The Plaintiff asserts claims for both fraud by affirmative misrepresentation and fraud by omission. Under Kentucky law, "[f]raud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003).

### A.       Fraud by Affirmative Misrepresentation

The Plaintiff bases his affirmative misrepresentation claim on BB&T's May 21, 2007 loan commitment letter (DN 10). It appears undisputed that this letter stated that the collateral for the construction loan would be a 60-bed hospital (DN 10). The Plaintiff argues that BB&T failed to correct the representation it made in the May 21, 2007 letter concerning the scope of the project when BB&T solicited the Plaintiff's guaranty in July 2012 (DN 1-1 at ¶ 15).

Under Kentucky law, fraud based on affirmative misrepresentation requires proof that: (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Bassett v. Nat. Collegiate Athletics Ass'n*, 528 F.3d 426, 436 (6th Cir. 2008); *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (*citing Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)); *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

BB&T argues that the Plaintiff fails to allege an element for a fraud by affirmative misrepresentation claim—that the statements in BB&T's loan commitment letter were false at

- 5 -

the time they were made (DN 11). BB&T contends that the complaint fails to state a claim because the Plaintiff fails to allege that BB&T knew on May 21, 2007, when it provided the Plaintiff with the loan commitment letter, that the statement in the letter was false (DN 6-1). Specifically, the complaint alleges that "by the time BB&T requested the Guaranty from the Plaintiff in July 2007, BB&T had actual knowledge that the loan proceeds would be used to construct a 48-bed hospital facility, which was inconsistent with the project explicitly described in the loan documents and the loan commitment letter." (DN 1-1 ¶ 27).

In response, the Plaintiff argues that while the complaint does not allege the precise date on which BB&T learned of the project's change in scope, the complaint avers that BB&T knew of the change before the Plaintiff signed the guaranty (DN 10). He also argues that the complaint alleges that the July 2012 guaranty references the final loan documents, which describe the project as a 60-bed hospital (DN 1-1).

Here, we will grant BB&T's motion to dismiss the claim for fraud by affirmative misrepresentation. Viewing the complaint in the light most favorable to the Plaintiff and drawing all reasonable factual inferences in his favor, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), the Plaintiff has not shown that BB&T made the representation in the loan commitment letter with reckless disregard for its truth, nor has he shown that BB&T knew the representation was false when it was made. *Bassett*, 528 F.3d at 436.[1] Thus, the Plaintiff fails to allege an element for a claim for fraud by affirmative misrepresentation.

---

[1] The Plaintiff also argues that knowledge of the date upon which BB&T learned of the project's change in scope is the type of information that he would not know prior to commencing discovery. However, "conclusory allegations" will not prevent a motion to dismiss. *Mezibov*, 411 F.3d at 716. Without well-pleaded facts permitting this court to infer more than the mere possibility that BB&T knew that the representation was false, the complaint does not show that the Plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 677-78.

### B.      Fraud by Omission

A claim for fraud by omission is grounded in a duty to disclose. *Giddings*, 348 S.W.3d at 747; *Republic Bank & Trust Co. v. Bear, Stearns & Co.*, 707 F. Supp. 2d 702, 710 (Ky. 2011). "Mere silence is not fraudulent" absent such a duty. *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998)). For a fraud by omission claim, a plaintiff must prove that: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence. *Giddings*, 348 S.W.3d at 747.

The existence of a duty to disclose is a question of law for the court. *Id*. Under Kentucky law, a duty to disclose arises in four circumstances: (1) where there is a confidential or fiduciary relationship between the parties; (2) where the duty is provided by statute; (3) where a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to disclose the same. *Id.* at 747-48; *In re Sallee*, 286 F.3d 878, 893 (6th Cir. 2002).

In further briefing it seems that the Plaintiff abandons his fiduciary relationship argument by asserting that "a fraud by omission claim is viable despite the absence of a fiduciary duty." (DN 10). Thus, he supports his fraud by omission claim by alleging that BB&T's guaranty was a partial disclosure that created the impression of full disclosure and that BB&T had superior knowledge upon which the Plaintiff relied (DN 10).[2]

---

[2] The Plaintiff fails to support his argument that a fiduciary duty existed because he does not allege (1) that the relationship existed before the transaction that is the subject of the action; (2) that reliance was not merely subjective—the aggrieved party trusted the other party to act as a fiduciary and such trust was reasonable under the circumstances; and (3) that the nature of the relationship imposed a duty on the fiduciary to act in the principal's interest, even if action was to the detriment of the fiduciary. *In re Sallee*, 286 F.3d at 893.

The Plaintiff argues that BB&T owed him a duty to correct the alleged misrepresentation in the loan commitment letter prior to soliciting his personal guaranty (DN 10). He contends that the loan commitment letter was a partial disclosure of material facts that created the impression of full disclosure and also that BB&T had superior knowledge upon which the Plaintiff relied. *See In re Sallee,* 286 F.3d at 893.[3] However, absent a fiduciary duty, courts are "careful not to apply the other circumstances so broadly as to transform everyday arms-length business transactions into fiduciary relationships." *Gresh v. Waste Serv. of Am. Inc.*, 311 Fed. App'x 766, 772 (6th Cir. 2009).[4]

Here, the Plaintiff does not allege that BB&T's loan commitment letter created an impression of full disclosure because, as we discussed previously, the Plaintiff has not alleged that BB&T knew the statement in the loan commitment letter was false when it was made. Also, because the loan commitment letter merely restated the construction loan details as the Plaintiff already knew them through the course of investor negotiations, which he acknowledges in his complaint, the Plaintiff does not allege that the letter created the impression of full disclosure (DN 1-1). Further, without a well-pleaded allegation that BB&T exercised ordinary diligence to discover the change in scope of the construction project, the Plaintiff cannot allege that BB&T

---

[3] The Plaintiff's complaint alleges that BB&T had a duty to correct the information about the scope of the project "because: (1) the previous disclosure of material facts by BB&T were not corrected after they later became false; (2) the partial and misleading disclosure of material facts in the Guaranty which created the false impression of full disclosure; and (3) BB&T's superior knowledge or access to knowledge concerning the true and complete facts, which knowledge was knowingly withheld by BB&T to the disadvantage of the Plaintiff." (DN 1-1 ¶ 29).

[4] BB&T's response argues that no fiduciary relationship existed with the Plaintiff because finding a fiduciary relationship is "rare in commercial cases" as it is "not reasonable to believe the other party will put your interests ahead of their own." *In re Sallee*, 286 F.3d at 892. Only in "special circumstances will a bank have a fiduciary relationship with its borrowers." *Id.* at 893. Also, Kentucky courts rarely impose a fiduciary relationship between a bank and a borrower and when they have, the facts have indicated "that the bank profited at the borrower's expense from confidential information received from the borrower." *Id.*

had superior knowledge upon which he relied. *See Giddings,* 348 S.W.3d at 749; *see e.g.*, *Marine Midland Bank v. Smith*, 482 F.Supp. 1279, 1288 (S.D.N.Y.).

Thus, we will grant BB&T's motion to dismiss the Plaintiff's fraud by omission claim.

## II.    Negligent Misrepresentation

Under Kentucky law, a tortfeasor may be liable for negligent misrepresentation if the tortfeasor (1) in the course of his business or a transaction in which he has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) fails to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information. *Republic Bank*, 707 F. Supp. 2d at 713-714 (*citing Presnell Contr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004)). Importantly, negligent misrepresentation "requires an affirmative false statement; a mere omission will not do." *Id.* at 715.

Here, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate because the Plaintiff bases his negligent misrepresentation claim solely on an alleged omission—that BB&T failed to correct the information in its loan commitment letter—rather than an affirmative statement, which is a required element. *See id.* Also, the Plaintiff does not allege the second element of the tort—that BB&T supplied false information for guidance in a business transaction. *Id.*[5]

First, the Plaintiff merely alleges that BB&T's omitted that the scope of the project changed. Specifically, he alleges that BB&T knew about the change in the construction project's scope but omitted that the scope changed between May 2007—when the Plaintiff received the loan commitment letter, and July 2007—when he signed the guaranty. Again, the Plaintiff

---

[5] We will not address Plaintiff's argument that guaranty disclosure requirements, codified in KRS § 371.065, evidence the type of "business guidance" required to make a claim for negligent misrepresentation at issue here (DN 10).

cannot allege that the loan commitment letter was an "affirmative false statement" at the time it was made (DN 10). Thus, BB&T's "mere omission" regarding the scope of the construction project will also not satisfy this claim. *Id.* at 713-714.

Second, the Plaintiff fails to allege that BB&T supplied false information for guidance in his business transaction. In *Giddings*, the Kentucky Supreme Court recognized that liability for negligent misrepresentation does not necessarily attach to every business entity that provides information to its customers. 348 S.W.3d at 745.[6] In the context of BB&T's construction loan, BB&T argues that it was not offering "services . . . consisting of information upon which others will rely." *Id.* Rather, BB&T contends that it provided a loan (a product) and "only incidentally" provided information about that product (the scope of the loan). *Id.*

Thus, the Plaintiff does not allege that BB&T supplied false information for guidance in a business transaction as he does not allege any facts to support the notion that BB&T was "in the business of supplying information" to the KMC investors. *Id.*; *see Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, *7 (E.D. Ky. Sept. 27, 2007) (reasoning that in a negligent misrepresentation claim against a hospital, a hospital "is in the business of providing medical services to individuals" and the plaintiff "cannot allege that the hospital is in the business of supplying information for the guidance of others in

---

[6] We find *Giddings* instructive because the Kentucky Supreme Court discussed cases in which Kentucky courts found liability based on negligent misrepresentation which:

> involve a party who "supplies false information for guidance of others in their business transactions" and is liable to the recipient for failing to "exercise reasonable care or competence in obtaining or communicating the information." A construction consulting firm, [] an attorney providing a title option, [and] an auctioneer, offer services which consist of information upon which others will rely. A manufacturer of a product is not in the business of supplying information but rather the product itself and, only incidentally, the information about a product. The product and any information about its character, nature or performance are properly the subject of the parties' contract.

348 S.W.3d at 745.

their business transactions with third parties.") Therefore, we will grant BB&T's motion to dismiss the negligent misrepresentation claim.

### III.     Implied Covenant of Good Faith and Fair Dealing

The Plaintiff alleges that BB&T breached the implied duty of good faith and fair dealing by advancing loan proceeds for the hospital's construction despite its knowledge that the scope of the project changed from a 60-bed hospital to a 48-bed hospital (DN 1-1 ¶ 39). The Plaintiff further alleges that this breach created a "lending scenario with risks and liabilities never disclosed to or anticipated by the Plaintiff." (DN 1-1 ¶ 39).

A covenant of good faith and fair dealing is implied in every contract. *Farmers Bank & Trust Co. v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). A claim for breach of a covenant of good faith and fair dealing may be brought in contract or in tort. *Id.* The covenant "encompasses [a] duty to act sincerely and without deceit or fraud." *Pioneer Res. Corp. v. Nami Res. Co.*, No. 6:04-465-DCR, 2006 WL 1778318, *9 (E.D. Ky. June 26, 2009). However, "[n]ot all contracts impose a duty that, if breached in bad faith, may be remedied in tort." *Id.*

### A.     Tort Cause of Action

For a breach of good faith claim brought in tort, Kentucky courts "typically only find a breach of duty to act in good faith in those contracts involving 'special relationships,' which are not found in ordinary commercial settings." *Id.* at *9. Elements of a "special relationship" include unequal bargaining power, vulnerability, and trust among the parties. *Id.*; *Lady of Bellefonte*, 2007 WL 2903231 at *8. The classic special relationship arises in the context of contracts between an insurer and its insureds. *Id.*

- 11 -

Here, the Plaintiff does not allege that a special relationship exists between the Plaintiff and BB&T as they are simply a borrower and a lender in an arms-length commercial transaction. *See id.* The Plaintiff has not alleged any unequal bargaining power, vulnerability, or trust between the parties necessary to establish a special relationship (DN 1-1). The Plaintiff entered into the transaction with BB&T as a member of KI—an investment group—to engage in a sophisticated and complicated hospital construction project. BB&T contends that, absent a special relationship, it was not obligated to take steps to protect the Plaintiff's investment interests because the parties were "sophisticated business entities" who bargained at arms-length. *See Lady of Bellefonte*, 2007 WL 2903231 at *8.Thus, the Plaintiff has not adequately alleged a "special relationship." *Id.*; *see Pioneer*, 2006 WL 1778318 at *9.

## B.   Contractual Cause of Action

For a breach of good faith claim brought in contract, Kentucky courts generally do not require a showing of breach of contract or evidence of a "special relationship." *See O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457-58 (6th Cir. 2005). Rather, the plaintiff must show that the defendant "engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* (*citing* 23 Williston on Contracts § 63:22 (4th ed. 2004)).

BB&T argues that the Plaintiff was not denied the benefit "originally intended by the parties" in the guaranty agreement because the Plaintiff entered into the guaranty to induce BB&T to extend a construction loan for a hospital, which BB&T did. *See id.*

The Plaintiff responds that his complaint does, in fact, allege that he was denied the benefit of the guaranty originally intended by the parties because he was denied the investment

as he anticipated it (DN 1-1, ¶¶ 17-18, 39).[7] The Plaintiff contends that he intended to invest in a $21.5 million, 60-bed hospital when he signed the guaranty, not the $18.5 million, 48-bed hospital for which BB&T's provided the construction loan (DN 1-1, ¶¶ 17-18, 39). Thus, the Plaintiff sufficiently alleges that BB&T materially breached the implied covenant of good faith in contract because he alleges that BB&T knew about the change in scope which created unanticipated financial risks and liabilities (DN ¶ 39).

Therefore, we will deny BB&T's motion to dismiss the Plaintiff's claim for violation of the contractual duty of good faith and fair dealing. *See O'Kentucky*, 147 F. App'x at 457-58.

## IV.    *Res Judicata*

BB&T argues that all of the Plaintiff's claims are barred by the doctrine of *res judicata* because the validity of the guaranty was fully litigated in a prior proceeding in which Rialto, the buyer of the defaulted construction loan and guaranties, enforced the Plaintiff's guaranty along with those of the other investors (DN 6-1). The Plaintiff's complaint states that "[f]inal judgment was entered against the Plaintiff and other physician investors on the guaranties in 2011. This Judgment was not superceded and is subject to enforcement and collection." (DN 1-1 ¶ 23).

Under the doctrine of *res judicata* federal courts "must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816-17 (6th Cir. 2010). The judgment which BB&T argues is a

---

[7] Notwithstanding the fact that the Plaintiff cites an unpersuasive Kentucky case that stated New Hampshire common law, *Prather v. Providian National Bank*, for the proposition that New Hampshire's duty of good faith applies in Kentucky, and requires parties to "refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation if intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance on it." No. 2006-CA-630-MR, 2007 WL 1784084, *3 (Ky. Ct. App. Jun. 8, 2007) (*citing Centronics Corp. v. Genicom Corp.*, 562 A.2d 187, 190-93 (N.H. 1989)). We do not find New Hampshire's common law duty of care persuasive here.

- 13 -

bar to the Plaintiff's claims was rendered in an Indiana state court, thus the law of Indiana governs whether the prior judgment has preclusive effect here. *Id.*

Under Indiana law, claim preclusion is applicable when a final judgment on the merits has been rendered and only acts to bar a subsequent action on the same claim between the same parties. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). *Res judicata* cannot operate to bar a cause of action which has not yet accrued at the time of the prior action. *McCarthy v. McCarthy*, 308 N.E.2d 429, 432 (Ind. Ct. App. 1974).

The Plaintiff contends that the prior proceeding was initiated by an affiliate of Rialto, the assignee of BB&T's construction loan and the personal guaranties, not BB&T (DN 10). In the prior action, an Indiana state court entered summary judgment in favor of Rialto and enforced personal guaranties against the Plaintiff and other investors. The Plaintiff alleges that BB&T was not a party to that litigation and the issues of BB&T's fraud and negligence were not asserted, litigated, or decided in that proceeding (DN 10). The Plaintiff further alleges that he did not and could not discover that BB&T had knowledge of or approved the change in the hospital's construction plan at the time it extended the construction loan and obtained the Plaintiff's guaranty during the prior proceeding (DN 10)

The Plaintiff alleges his claims had not "accrued" under Indiana law. *McCarthy*, 308 N.E.2d at 432. Thus, we will deny BB&T's motion to dismiss based on *res judicata.*

A separate order will be entered in accordance with this opinion.

March 22, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

- 14 -